IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| In re: | ) | Case No. 25-81134 |
| | ) | |
| EAD CONSTRUCTORS, INC., | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |

### Order Granting Corbion's Motion for Relief

THIS MATTER is before the court on motion for relief from automatic stay filed by Purac America, Inc. d/b/a Corbion. Lauren R. Goodman and Todd Weidemann appeared for the debtor. J.P. King appeared for Corbion.[1] The parties offered evidence in support of and in opposition to the motion.[2] For the reasons stated below, the motion is granted. There is a strong federal policy favoring arbitration. Allowing arbitration to proceed does not undermine the objectives of the Bankruptcy Code. And the balance of hardships favors allowing the arbitration to continue.

### Findings of Fact

Corbion owns the Mallard Lactic Acid Plant in Blair, Nebraska. On May 28, 2021, Corbion hired the debtor to provide engineering, procurement, and construction services to expand the plant. The parties entered a written

---

[1] Other parties appeared at the hearing including Richard Kalson for BrandSafway, LLC; Justin D. Eichman for Cerris Systems North Central, Inc.; Elijah J. Poferl for CentiMark Corp.; Trev Petersen for EAD Management Services, Inc.; Jeremy C. Hollembeak for Gethmann Construction Inc.; Craig Martin for InDemand Industrial Services, LLC; Luke J. Klinker for Interstates, Inc.; John D. Stalnaker for Moen Steel Erection, Inc.; and Kristin Krueger for Weitz Industrial, LLC. Several of the parties filed separate motions for relief from stay to foreclose construction liens in state court against Corbion's real estate.

[2] The court receives the following exhibits into evidence: Doc. #67; Doc. #69; Doc. #70; Doc. #112; Doc. #113; Doc. #114; Doc. #116; Doc. #117; Doc. #118; Doc. #119; Doc. #120; Doc. #121; Doc. #125; Doc. #126; Doc. #131; Claim #3; Claim #6; Claim #7; Claim #8; Claim #10; Claim #11; Claim #14; Claim #15. Objections to the evidence are overruled. The parties' supporting affidavits characterize the supporting documents. They also contain argumentative statements, and potentially speculative statements. The case is resolved on the underlying contract documents, arbitration status, arbitration documents, and bankruptcy claims documents. In ruling on the motion, the court gave the affidavit evidence the weight it was due.

contract for the services. Corbion alleges the debtor mismanaged the project. It also alleges the project was months behind schedule, over budget, and contained significant defects. The debtor did not pay several subcontractors. The subcontractors filed construction liens. The liens are being foreclosed in litigation pending in state court.

Corbion claims over $25 million in damages against the debtor. Corbion filed for arbitration before the American Arbitration Association under the mandatory arbitration clause in Corbion's agreement with the debtor. The AAA appointed a panel of three arbitrators with construction-industry expertise. The parties engaged in years of discovery. A two-week hearing on the merits was to begin November 3, 2025. Two weeks before the hearing the debtor's counsel informed the panel and Corbion that the debtor intended to file for bankruptcy protection. The debtor filed its Chapter 11 bankruptcy case on October 22, 2025, staying the hearing on the merits.

Corbion seeks relief from the automatic stay to resume and complete the arbitration. It does not seek relief to enforce the arbitration award outside the bankruptcy claims process.

## Conclusions of Law

There is a strong federal policy favoring arbitration and enforcement of arbitration clauses in contracts. As a result,

> courts *widely accept* that the bankruptcy court must stay its own proceedings to allow arbitration to continue in non-core matters because allowing arbitration in non-core matters is unlikely to conflict with the underlying policies of the Bankruptcy Code.

*In re Farmland Indus., Inc.*, 309 B.R. 14, 18 (Bankr. W.D. Mo. 2004) (emphasis added). Corbion's claims sound entirely in state law—breach of contract, professional negligence, and a common-enterprise theory under Neb. Rev. Stat. § 25-21,185.10—and arise exclusively from pre-petition agreements. The Bankruptcy Code does not create or govern Corbion's substantive rights.

The debtor raises the threshold issue of whether enforcement of the arbitration clause in this particular case undermines the objectives of the Bankruptcy Code. In such cases a bankruptcy court has discretion to override an arbitration agreement. *See Lewallen v. Green Tree Servicing, L.L.C.*, 343 B.R. 225, 231–32 (W.D. Mo. 2006), *aff'd,* 487 F.3d 1085 (8th Cir. 2007). In exercising its discretion, a bankruptcy court must review the particular

> nature of the underlying claim and facts specific to the bankruptcy case. *See id*.
>
>> The objectives of the Bankruptcy Code relevant to this inquiry include: "the goal of centralized resolution of purely bankruptcy issues, the need to protect creditors and reorganizing debtors from piecemeal litigation, and the undisputed power of a bankruptcy court to enforce its own orders."

*Id.* (citing *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108 (2d Cir. 2006)). If the court finds a "severe conflict," it has discretion to "override" enforcement of an otherwise valid agreement to arbitrate. *Id.* The debtor contends claim allowance is a core proceeding under 28 U.S.C. § 157(b)(2)(B). It also argues the arbitration will impose uncertainty, undermine visibility, and create duplicative and piecemeal litigation.

In this case continuing arbitration does not conflict with or undermine the objectives of the Code. Although claim allowance is a "core" proceeding, claim allowance does not alone constitute sufficient grounds to override a valid arbitration agreement. The Code requires more, such as "when the core proceeding concerns the adjudication of federal bankruptcy rights completely separate from 'inherited contractual claims'." *In re Crossroads Ford, Inc.*, 2010 WL 3491183, at *2 (Bankr. D. Neb. Sept. 1, 2010) (citing *In re Farmland Indus.*, 309 B.R. at 19). This case is materially indistinguishable from *In re Crossroads Ford*, which lifted the stay to arbitrate construction-contract claims under state law and liquidate the moving creditor's claim.

The debtor overstates its visibility concerns. The debtor asserts it will lose appeal rights. It also asserts Corbion has the largest claim and claim determination will impact other creditors. Grounds to appeal arbitration are limited. But limited appellate review is inherent in the arbitration process, the process to which the parties agreed. Regarding impact on creditors, all parties in interest received the motion for relief from stay. No one other than the debtor objected. Several subcontractor creditors appeared at the hearing on the motion for relief, themselves seeking relief to foreclose construction liens against Corbion's property. None of them objected to Corbion's motion or expressed any concern regarding visibility. It is true the trial of Corbion's disputed claim in bankruptcy court would be a public proceeding. Arbitration is not a public proceeding. But it is not clear the lack of a public hearing prejudices other claimants to any meaningful degree.

The piecemeal litigation is a risk in this case. But the risk exists regardless of whether the arbitration proceeds. If it proceeds, some Corbion claims against the debtor remain unresolved. And disputes between at least two

subcontractors and the debtor remain unresolved. If the arbitration remains stayed, the subcontractor disputes still require resolution, as do the subcontractors' direct claims against Corbion, the latter of which must be resolved in state court. Under the circumstances, the risk of piecemeal litigation does not undermine the objectives of the Bankruptcy Code or override the strong policy favoring arbitration.

Having determined arbitration does not undermine the objectives of the Bankruptcy Code, the next issue is whether cause exists under § 362(d)(1) to lift the stay. Under § 362(d)(1) of the Bankruptcy Code, the court shall grant relief from the automatic stay "for cause." 11 U.S.C. § 362(d)(1). The Bankruptcy Code does not define cause to grant relief to continue litigation in state court, or in this case to continue an arbitration proceeding. The test balances the hardships on the parties and the estate.

> In making the determination of whether to grant relief from the stay, the court must balance the potential prejudice to the debtor, to the bankruptcy estate, and to the other creditors against the hardship to the moving party if it is not allowed to proceed in state court. The factors used to balance the hardships are: (1) judicial economy; (2) trial readiness; (3) the resolution of preliminary bankruptcy issues; (4) the creditor's chance of success on the merits; (5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors.

*Wiley v. Hartzler (In re Wiley)*, 288 B.R. 818, 822 (B.A.P. 8th Cir. 2003) (internal citations omitted). There are not preliminary bankruptcy issues requiring resolution, which favors granting relief. Corbion's chance of success on the merits is neutral and favors neither side. The remaining factors and the balance of hardships favor granting relief to arbitrate.

Judicial economy strongly favors arbitration. The dispute involves a hygienic food-production facility construction project. The underlying claims do not invoke substantive federal bankruptcy rights. They are contract claims under state law. Resolution requires specialized technical knowledge. The arbitration panel was selected for its expertise. The panel is familiar with the dispute and highly qualified to resolve it. Litigation in this court is not as efficient and deprives Corbion of the benefit of its bargained-for arbitration clause.

Trial readiness strongly favors arbitration. The arbitration has been pending since July 2023. Corbion prosecuted its claims for over two years, retained experts, prepared witnesses, and educated the arbitration panel. The final merits hearing was scheduled for November 2025. The debtor filed this

bankruptcy case less than one month before the merits hearing. Starting the litigation from scratch in this court through an adversary proceeding will take significant time, effort, and cost.

For the reasons stated above, the potential burden to the bankruptcy estate and the impact on other creditors slightly favors granting relief. The debtor and the estate will not suffer great prejudice if Corbion's claims are arbitrated – the claims must be resolved in some forum. The debtor raises concerns about the costs of defense and the erosion of its wasting indemnity insurance coverage. The cost to resolve the dispute is not insignificant, but "is ordinarily considered an insufficient basis for denying relief from the stay." *Wiley*, 288 B.R. at 823. The wasting indemnity coverage is of some concern but does not alter the balance of hardships. Resolution in this court will also consume substantial estate resources. Because the burden is similar regardless of where the claim is heard, even considering the insurance policies, the factor slightly favors granting relief.

## Conclusion

Corbion's motion for relief from the automatic stay (Doc. #61) is granted. The automatic stay imposed by 11 U.S.C. § 362(a) is lifted to permit Corbion, the debtor, the AAA, and the arbitration panel to resume and complete the arbitration (AAA Case No. 02-23-0003-3408), including without limitation, conducting merits hearings, submitting post-hearing briefing, and entry of a final arbitration award on all claims and counterclaims. Corbion is not granted relief to enforce any arbitration award against the debtor or the bankruptcy estate in any forum other than this court.

DATED: March 5, 2026

BY THE COURT:

/s/ Brian S. Kruse
Brian S. Kruse
Bankruptcy Judge